```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| WILLIE H. DRAKEFORD : | |
|  petitioner, : | |
| : | PRISONER |
|    v. : | Case No. 3:05cv1062 (AVC) |
| : | |
| COMMISSIONER THERESA LANTZ, : | |
|  respondent. : | |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner is an inmate who is currently participating in a Department of Correction work release program at Isaiah House in Bridgeport, Connecticut. He brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for assault. For the reasons set forth below, the petition is denied.

### FACTS

On October 26, 1996, Nigel Douglas and Desmond Padilla were sitting on the front porch of Padilla's residence located at 132 Lansing Street in Bridgeport, Connecticut. At approximately, 3:40 p.m. that afternoon, a red car drove up to the front of Desmond Padilla's residence and stopped. At least one male got out of the car and made a remark to Douglas and Padilla about their participation in prior robberies. Gunshots were then fired from one or more occupants of the car in the direction of the house, striking Padilla in the left shoulder. Douglas was not injured.[1]

---

[1] The state's theory of the case was that the shooting was retaliatory and that Douglas was the intended target of the shooting because he had participated in a robbery with other

On July 10, 1997, police officers arrested the petitioner on charges of first degree assault for allegedly shooting at Mr. Douglas and Mr. Padilla on October 26, 1996.  See Resp't's Mem. App. E at 9.

On July 28, 1998, a jury in the Connecticut Superior Court for the Judicial District of Fairfield convicted petitioner of one count of accessory to assault in the first degree in violation of Connecticut General Statutes §§ 53a-8 and 53a-59(a)(5), one count of attempted assault in the first degree in violation of Connecticut General Statutes §§ 53a-49 and 53a-59(a)(5) and conspiracy to commit assault in the first degree in violation of Connecticut General Statutes §§ 53a-48 and 53a-59(a)(5).  On September 25, 1998, a judge sentenced the petitioner to total effective sentence of fifteen years of imprisonment.  See State v. Drakeford, 63 Conn. App. 419, 420-22 (2001).

On appeal, the petitioner raised one ground.  He argued that the trial court denied him his right to conflict-free representation.  See id. at 420.  On May 15, 2001, the Connecticut Appellate Court affirmed the judgment of conviction. See id. at 428.  The Connecticut Appellate Court held that the trial court had properly explored the potential conflict of interest of petitioner's trial counsel and counsel's prior

---

individuals on a prior occasion.  Padilla had not been involved in the previous robbery. *Drakeford,* at 422-23, 802 A.2d at 846 (citing *State v. Drakeford*, 63 Conn. App. at 420, 777 A.2d . at 205.)

2

representation of one of the victim's of the shooting did not prejudice the petitioner or negatively affect counsel's performance. On June 27, 2001, the Connecticut Supreme Court granted the petition for certification to appeal from the decision of the Appellate Court "limited to the following issue: 'Did the Appellate Court properly affirm the trial court's finding of no conflict of interest under the facts of the case.'" State v. Drakeford, 257 Conn. 901 (2001). On August 13, 2002, the Connecticut Supreme Court affirmed the judgment of the Appellate Court. See State v. Drakeford, 261 Conn. 420, 433 (2002).[2] The Connecticut Supreme Court held that the Appellate Court had properly concluded that the trial judge adequately inquired into the petitioner's potential conflict of interest and correctly determined that no conflict existed and that the petitioner had not been deprived of his Sixth Amendment right to effective assistance of counsel.

**STANDARD**

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the federal laws or

---

[2] In its decision, the Connecticut Supreme Court noted that it was necessary to re-phrase the certified question in order to "bring it into conformity with the issue presented by [the] appeal." Id. at 422, n.5. The court re-phrased the question for certification as follows: Had the Appellate Court properly "concluded that the scope of the trial court's inquiry into defense counsel's potential conflict of interest and the court's concomitant finding that defense counsel had no conflict of interest did not result in a deprivation of the defendant's constitutional right to the effective assistance of counsel." Id. at 422.

3

the Constitution.  See 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court may grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  Bell v.

Cone, 535 U.S. 685, 694 (2002). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." Lurie v. Wittner, 228 F.3d 113, 127 (2d Cir. 2000) (quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard that the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## DISCUSSION

The petitioner asserts one ground for relief. He contends

5

that the attorney who represented him prior to and during trial had a conflict of interest because he also represented Nigel Douglas in a criminal matter in which Douglas had been charged with robbery.  The petitioner also claims that the trial court failed to adequately inquire into the conflict.

The Sixth Amendment right to counsel in a criminal prosecution includes "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981).  An attorney may represent multiple defendants without violating the Sixth Amendment unless the representation gives rise to an actual conflict of interest.  The mere possibility of a conflict is insufficient to demonstrate a Sixth Amendment violation.  See Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980).

In Cuyler, three defendants, accused of murder, were tried separately but were represented by the same two privately retained attorneys at trial.  In that case, no one objected to the multiple representation.  The Supreme Court held that if a defendant does not object to multiple representation at trial, he cannot establish a violation of the Sixth Amendment unless he demonstrates "that his counsel actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." Id. at 350; see also Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Prejudice is presumed only if the defendant demonstrates counsel 'actively

6

represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.'"(quoting Cuyler, 446 U.S. at 348-350)).

The Supreme Court has held that a trial court has an obligation to investigate timely objections made to multiple representation of parties. See Holloway v. Arkansas, 435 U.S. 475 (1978). In Holloway, an attorney represented three defendants at the same trial. When counsel moved for the appointment of separate counsel for each defendant due to a conflict of interest in representing all three defendants, the trial court denied the motions without inquiring as to basis of the potential conflicts of interest. The trial court also overruled counsel's later objections to his continued representation of all three defendants. The Supreme Court held that the trial court had a duty to investigate the attorney's timely objections to his representation of multiple defendants as well as his motions for the appointment of separate counsel. Id. at 484. Under the facts of that case, the Supreme Court determined that the trial court's failure to appoint separate counsel for each defendant or to investigate whether the risk of a conflict of interest required separate counsel deprived the defendants of their right to the effective assistance of counsel. Id. at 484. The court concluded that this deprivation of the assistance of counsel warranted reversal of the defendants' convictions. Id. at 488-89.

In Cuyler, the Supreme Court acknowledged that trial courts had an obligation to investigate timely objections to representation of multiple defendants, but held that this obligation did not apply to all cases involving multiple representation. The Court noted that in determining whether a potential conflict of interest required an investigation, trial courts necessarily rely on the "good faith and good judgment of defense counsel" because attorneys who represent multiple defendants in a criminal case are "'in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of trial.'" Id. at 347 (quoting Holloway, 435 U.S. at 485).

In 1981, the Supreme Court re-visited the issue of a trial court's duty to investigate a potential conflict of interest in counsel's representation of more than one party. The Supreme Court concluded that when it is sufficiently apparent from the record that there is a possible conflict of interest between a represented party and that party's attorney, a state court judge has a duty to inquire into the conflict even when no objection has been filed by the party. See Wood, 450 U.S. at 272-73.

In analyzing the conflict of interest claim in this case, the Connecticut Supreme Court applied the standards established

in the Supreme Court decisions of Wood, Holloway and Cuyler.[3] Because the state court applied the correct legal standards, the state court decision does not meet the "contrary to" prong of section 2254(d)(1).

Prior to the start of petitioner's criminal trial, the state filed a motion to disqualify the petitioner's counsel, Attorney Mirsky, on the ground that there was a potential conflict of interest in Attorney Mirsky's representation. The motion alleged that Attorney Mirsky had represented Nigel Douglas, one of the alleged victims in the petitioner's case, on robbery charges in a criminal case that concluded on April 25, 1997. On April 15, 1998, the court held a hearing on the motion to disqualify. On April 20, 1998, the trial court denied the motion.

The Connecticut Supreme Court found that Attorney Mirsky had advised the trial court at the April 15, 1998 hearing that he had represented Mr. Douglas for a very short time prior to his representation of the petitioner, had never appeared in court with Douglas and had not engaged in any plea negotiations with the state on behalf of Douglas. In addition, Attorney Mirsky informed the court that Mr. Douglas had not provided him with any

---

[3] Although the Connecticut Supreme Court's decision did not specifically reference Cuyler, the court did cite to State v. Crespo, 246 Conn. 665 (1986), a case which relied on both Holloway and Cuyler regarding the standard applicable to a trial court's inquiry into potential conflict of interest claims and a defendant's burden of demonstrating the existence of an actual conflict of interest. Thus, the Connecticut Supreme Court's statement of the law, although partially taken from state cases, is consistent with Supreme Court precedent.

9

information relating to the petitioner or any information that might influence his cross-examination of Douglas at the petitioner's trial. The Connecticut Supreme Court also noted that just prior to jury selection, the trial court again inquired about the potential conflict of interest. Both the Assistant State's Attorney and Attorney Mirsky were present during this inquiry. The Assistant State's Attorney indicated that she had produced the state's file on the robbery case involving Mr. Douglas to enable Attorney Mirsky to confirm that he had no conflict in continuing to represent the petitioner. The Assistant State's Attorney informed the court that Attorney Mirsky had notified her that the file did not contain any information that might cause him to change his belief that no conflict of interest existed with regard to his continued representation of the petitioner. State v. Drakeford, 261 Conn. 420, 428-29 (2002).

The Connecticut Supreme Court determined that after the trial court was made aware of the potential conflict of interest in Attorney Mirsky's representation of the plaintiff, it promptly undertook an inquiry to determine whether a conflict of interest in fact existed. The court concluded that the trial court's reliance on the representations of Attorney Mirsky as to the non-existence of a conflict of interest stemming from his prior representation of Mr. Douglas was proper and that there was no other evidence to undermine the truth of Attorney Mirsky's

representations.  In addition, Mr. Douglas's testimony at the petitioner's trial supported the trial court's conclusion that no conflict of interest had resulted from Attorney Mirsky's brief representation of Douglas in a prior criminal proceeding.  The Connecticut Supreme Court held that the testimony of Attorney Mirsky reasonably supported the determination that no conflict of interest existed, that no further inquiry was necessary and that the motion to disqualify should be denied.  Id. at 429-30.

The Connecticut Supreme Court also considered the petitioner's claim that trial counsel had an actual conflict of interest that adversely affected counsel's performance.  The court concluded that the record of the proceedings at trial did not support the petitioner's claim of the existence of a conflict of interest.  Further, the court agreed with the Connecticut Appellate Court's finding that trial counsel could have concluded, as a tactical matter, that any further testimony by Douglas about his participation in the robbery would recall the petitioner's involvement in the robbery and would have provided a motive for the petitioner's conduct in connection with the shots fired at Mr. Douglas.  The court also noted that trial counsel aggressively cross-examined Douglas concerning his identification of the petitioner as the shooter.  The court concluded that the petitioner had not shown that an actual conflict of interest existed that adversely affected the performance of trial counsel.

The court concludes that the Connecticut Supreme Court's

decision that the trial court adequately inquired as to the potential conflict of interest and properly determined that no conflict of interest existed and that petitioner had not demonstrated that an actual conflict of interest undermined the performance of trial counsel was a reasonable application of the law to the facts of the case. The petition is denied as to the claims of inadequate inquiry by the trial court into a potential conflict of interest and ineffective assistance of counsel based on an actual conflict of interest.[4]

## CONCLUSION

The Amended Petition for Writ of Habeas Corpus [**Doc. #5**] is **DENIED**. The court concludes that the petitioner has not demonstrated the denial of a constitutional right. Accordingly, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 22nd day of August 2011, at Hartford,

---

[4] In state court, the petitioner also raised a claim that the Connecticut Constitution guaranteed him a right to conflict-free representation in a criminal case. The petitioner does not specifically raise this state law claim in his federal petition. A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *See* 28 U.S.C. § 2254(a) (writ of habeas corpus may issue to state prisoner only on ground that prisoner is in custody "in violation of the Constitution or laws or treaties of the United States") ; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'federal habeas corpus relief does not lie for errors of state law'") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). To the extent that the petitioner is asserting a claim that the trial court's inquiry into the potential conflict of interest of his trial attorney violated his rights under the Connecticut Constitution, the claim is not subject to federal habeas review and is denied.

Connecticut.

                                               / s / _____
                                               Alfred V. Covello,
                                               United States District Judge